**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **Randolph S. Koch,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:12-cv-01934 (APM) |
| | ) | |
| **Mary Jo White,** *et al.***,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Courts are fond of saying about a lengthy litigation that at some point it must come to an end.  This case suffers from the opposite problem—at some point it must commence.  Plaintiff Randolph Koch filed this suit on November 29, 2012, claiming that his former employer, the Securities and Exchange Commission ("SEC"), denied him reasonable accommodations for his disabilities.  Nearly three years later, owing to a host of reasons, Defendant Mary Jo White, sued in her official capacity as Chairwoman of the SEC, has yet to file an answer.  Instead, the parties and the court are still wrangling over the precise contours of Plaintiff's complaint.  That comes to an end today.

Before the court is Defendant's second Motion to Strike, this time directed at Plaintiff's Second Amended Complaint.  Defendant argues that the Second Amended Complaint should be dismissed with prejudice because it fails to comply with Federal Rule of Civil Procedure 8(a)'s "short and plain statement" requirement and with this court's previous orders requiring him to adhere to Rule 8(a).  Additionally, although styled as a "Motion to Strike," Defendant makes other

arguments that are more in the way of a partial motion to dismiss. Specifically, she argues that Plaintiff cannot revive untimely complaints of failure to provide reasonable accommodations under the "continuing violations" doctrine. She also contends that Plaintiff's Count IV should be dismissed for failure to state a cognizable *Bivens* claim against four individual SEC employees.

The court will not strike Plaintiff's Second Amended Complaint and will not dismiss this action with prejudice, as Defendant requests. Nor will it require Plaintiff to re-plead his complaint to remove surplus allegations. However, the broad-sweeping allegations contained in the Second Amended Complaint will not frame this case as it moves forward. Rather, the case will concern only the discrete set of events that formed the basis for an administrative complaint that Plaintiff filed in October 2009, following his termination from the SEC. Claims that relate to prior grievances—apparently, there were many[1]—are dismissed from this lawsuit. For the reasons explained further below, the court grants in part and denies in part Defendant's Motion to Strike.

## II. BACKGROUND

The long history of this case commenced on November 29, 2012, when Plaintiff filed his original Complaint. Compl., ECF No. 1. He did not serve it for nearly six months. Return of Service, ECF No. 4. Plaintiff's original Complaint was a relatively succinct 14 pages and asserted, on various grounds, three claims: failure to accommodate disabilities, discrimination, and retaliation. *See generally* Compl. On June 17, 2013, Defendant moved to dismiss for failure to exhaust administrative remedies, construing Plaintiff's claims to arise out of an administrative complaint process commenced in 2011 after his termination. *See* Mem. Op. and Order, ECF No. 19, at 1 [hereinafter "March 31st Order"]. More than eight months later, after receiving multiple extensions of time, Plaintiff filed his opposition on February 28, 2014. He asserted that Defendant

---

[1] According to Defendant, this is the 14th case that Plaintiff has filed against his former employer. Def.'s Mem. in Supp. of Mot. to Strike, ECF No. 39, at 7. Of these, ten related to his employment at the agency. *Id.*

had identified the wrong administrative complaint and that this suit concerned an administrative complaint that he filed in 2009 challenging his termination from the SEC. *Id.* at 2. In her reply, Defendant conceded that, if Plaintiff's Complaint was premised on the 2009 administrative complaint, Plaintiff had exhausted his claims. *Id.* In light of this concession, Judge Friedman (who, at the time, was assigned to the case) treated Defendant's Motion as a motion for a more definite statement under Rule 12(e) and ordered Plaintiff to file an amended complaint that contained:

> [A] short and plain statement of [the] claim that shows that he is entitled to relief and that distinguishes plaintiff's claims from those that he has brought in related actions. In addition, plaintiff shall clarify precisely to which administrative complaint this action corresponds, providing the administrative claim number and the history of the proceeding of that particular claim (and only that claim) at the SEC and the EEOC. The Court also encourages Mr. Koch to avoid extraneous and otherwise unrelated information in order to avoid confusion with prior litigation.

*Id.* at 3-4.

Plaintiff's Amended Complaint, filed on June 13, 2014, was anything but "short and plain." It was 87 pages long and contained at least 222 separate paragraphs. Am. Compl., ECF No. 22. It recited extraneous facts regarding his life, medical history, and prior employment and otherwise failed to comply with Judge Friedman's March 31st Order. *See id.* Further, Plaintiff sought to add four individual defendants—David Kotz, Noelle Maloney, Brian Bressman, and Thomas Funciello (the "Individual Defendants")—all of whom are employees of the SEC. Am. Compl. ¶ 6. Plaintiff asserted a *Bivens* claim against these individuals for "Unlawful Search and Seizure," alleging that they illegally monitored his comings and goings from the SEC using the agency's electronic entry, or "swipe card," records. *Id.* ¶¶ 213-15.

On July 10, 2014, Defendant filed her first Motion to Strike the Amended Complaint, ECF No. 27, a motion to which Plaintiff did not respond, despite Judge Friedman's granting him

multiple extensions, *see* Min. Order, Sept. 3, 2014; Min. Order, Oct. 2, 2014. On November 5, 2014, Judge Friedman granted the Motion to Strike, finding that the "amended complaint does not contain any of the information the Court ordered plaintiff to include." Mem. Op. and Order, ECF No. 32, at 2. Judge Friedman ordered Plaintiff to "file a complaint that complies with Rule 8(a) . . . on or before February 3, 2015, or this case will be dismissed with prejudice. No extensions will be granted." *Id.* at 3. Plaintiff filed his Second Amended Complaint, as directed, on February 3, 2015. Second Am. Compl., ECF No. 33-1.

The Second Amended Complaint is considerably shorter than its prior iteration. It is 23 pages and contains 90 paragraphs. *Id.* As required by the March 31st Order, the Second Amended Complaint specifies the administrative claim on which it is based, identifies the claim number, *id.* ¶ 73, and summarizes the history of that proceeding, *id.* ¶¶ 59-67. But it also contains extraneous allegations. Like the Amended Complaint, it methodically recites Plaintiff's lengthy medical history. *Id.* ¶¶ __-33.[2] It also devotes multiple paragraphs to the SEC's prior alleged failures to accommodate his disabilities. *Id.* ¶¶ 29-33.

The Second Amended Complaint alleges that the SEC committed "continuing violations" of the Rehabilitation Act of 1973 by failing to accommodate Plaintiff's disabilities, which led to his termination on October 13, 2009. *Id.* ¶¶ 68-73. Plaintiff also advances claims for discrimination on the ground that he is Jewish, as well as claims of retaliation in response to his protected "EEO activity." *Id.* ¶¶ 74-87. Finally, Plaintiff re-asserts a *Bivens* claim against the Individual Defendants. *Id.* ¶¶ 88-90.

---

[2] When he filed his Second Amended Complaint, Plaintiff did not include pages 4-6, which cover paragraphs 7 through 21. Based on context, these paragraphs appear to address Plaintiff's medical history. Via Minute Order, the court ordered Plaintiff to file a complete Second Amended Complaint on or before September 21, 2015. *See* Min. Order, Sept. 17, 2015. As of the filing of this Memorandum Opinion, Plaintiff has not responded to the court's Minute Order.

After the case was assigned to this court, Defendant filed her second Motion to Strike on February 5, 2015, this time seeking dismissal of the action with prejudice. Mot. to Strike, Proposed Order, ECF No. 39, at 24. Defendant's primary assertion is that the Second Amended Complaint should be stricken because it does not comply with Rule 8(a)'s "short and plain statement" requirement, or Judge Friedman's prior orders. *Id.* at 13-14. Additionally, though her pleading is not styled as a "Motion to Dismiss," Defendant further argues that Plaintiff's failure-to-accommodate claim cannot, as a matter of law, rely on a "continuing violations" theory, which would permit Plaintiff to obtain relief for failures to accommodate that are otherwise barred by the statute of limitations. *Id.* at 17-19. She also contends that Plaintiff's *Bivens* claim is foreclosed because the Civil Service Reform Act ("CSRA") precludes a federal employee from pursuing a *Bivens* remedy for a constitutional tort arising in the context of his employment. *Id.* at 20.

Though he was given an ample opportunity to do so, Plaintiff never filed an opposition to Defendant's second Motion to Strike. He did, however, seek a lengthy extension of time to respond, citing his health conditions. Mot. for Extension of Time, ECF No. 41. When this court gave him over four weeks to respond—more time than the local rules permit, but less time than he sought, *see* Order, ECF No. 42—Plaintiff filed a Motion for Reconsideration. Mot. for Recons., ECF No. 43. The court denied that Motion. Order, ECF No. 44. On April 6, 2015, long after the due date for his opposition had passed, Plaintiff filed yet another motion for more time, Mot. for Add'l Time, ECF No. 45, which the court again denied, Order, ECF No. 46. Plaintiff has not sought to late-file an opposition to the Motion to Strike during the ensuing five months.

### III. DISCUSSION

#### A. Plaintiff's Inclusion of Extraneous Allegations

Rule 8(a)(2) mandates that a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Whereas Rule 8(a) addresses how to state a "claim for relief," Rule 8(d)(1) addresses how to state allegations supporting a claim: "Each allegation must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1). "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004) (citations omitted) (internal quotation marks omitted). Separately, Rule 41(b) authorizes the court to dismiss a claim or an action for failure to comply with either the Rules or an order of the court. Fed. R. Civ. P. 41(b); *Ciralsky*, 355 F.3d at 661.

There is little doubt that Plaintiff's Second Amended Complaint could be "plainer" and "shorter." But, on the whole, it otherwise complies with Rule 8(a) and the court's prior orders. As Defendant concedes, the pleading "identif[ies] the proper administrative complaint (addressing plaintiff's 2009 termination and his request in June 2009 for a reasonable accommodation)," as Judge Friedman's March 31st Order required. Mot. to Strike at 16. It also places Defendant on adequate notice of Plaintiff's claims, thus satisfying Rule 8's main purpose. *See Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) ("The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense . . . ."). Defendant is well aware that Plaintiff's failure-to-accommodate, discrimination, and retaliation claims all arise out of, and are limited to, his termination in October 2009 and the administrative claim he filed that same month. *See* Mot. to Strike at 17 (acknowledging the basis of Plaintiff's claims).

Defendant argues that dismissal with prejudice is warranted because Plaintiff has included "voluminous, repetitive, and/or unnecessary evidentiary information," *id.* at 21, pointing primarily to his "extraneous and confusing recitation of [his] medical problems over the last two decades" and allegations concerning the alleged unfairness of his administrative appeal process. *Id.* at 17. The court agrees that Plaintiff's detailed accounts of his past medical ailments and that of the administrative appeal are surplusage. But their inclusion does not warrant dismissal of the Second Amended Complaint with prejudice. None of the factors that the Court of Appeals identified in *Ciralsky*, which might justify such a harsh sanction, are present here. Defendant "does not contend that the complaint was unclear or that it failed to give the defendants fair notice of the claims against them"; nor does she "contend that the complaint was frivolous on its face." *Ciralsky*, 355 F.3d at 670-71. Given the strong preference for adjudicating cases on their merits rather than on the basis of formalities, *see id.* at 674, the court finds that dismissal with prejudice for less than perfect compliance with Rule 8(a) is unwarranted.

Nor will the court, for a second time, strike the Second Amended Complaint in its entirety and order Plaintiff to re-file his complaint with the surplusage excised. Admittedly, prolixity in a pleading places an unjustified burden on the responding party. *See id.* at 669. But the burden placed on Defendant here by Plaintiff's recitation of his medical history and other such allegations is modest. Defendant simply will be required to answer allegations she likely does not have the knowledge to admit or to deny. Requiring Plaintiff to fine tune his complaint to relieve Defendant of that burden is simply not worth further delaying the start of this litigation.

### B. The Asserted Legal Deficiencies of Plaintiff's Claims

Defendant also argues that "striking" the Second Amended Complaint is warranted because some of Plaintiff's claims are not cognizable as a matter of law. Specifically, Defendant asserts

that Plaintiff's failure-to-accommodate claim (Count I) cannot rely on the theory that the SEC's "ongoing failure to accommodate was a continuing violation." Second Am. Compl. ¶ 73; Mot. to Strike at 17-20. As to the *Bivens* claim (Count IV), Defendant argues that it should be "stricken" because the CSRA precludes Plaintiff from bringing a constitutional tort claim. Mot. to Strike at 20.

Defendant improperly asserts these arguments under Rule 12(f). Rule 12(f) only permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). It is not "a proper way to procure the dismissal of all or a part of a complaint" based on the legal insufficiency of the pleading. 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed. 2015) (citing cases); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010) (holding that Rule 12(f) "does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law"). The proper vehicle for such a challenge is Rule 12(b)(6). *See Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020-21 (N.D. Cal. 2009) (citing cases). When, as here, a party titles a motion as one to "strike" but makes substantive arguments properly reviewed under Rule 12(b)(6), a court may disregard the title of the pleading and treat it as a Rule 12(b)(6) motion. *See* 5C Wright & Miller § 1380 ("But as is true in other contexts, the technical name given to a motion challenging a pleading is of little importance inasmuch as prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike as a motion to dismiss the complaint."); *Consumer Solutions REO*, 658 F. Supp. 2d at 1021 (citing cases); *Outen v. Baltimore County*, 177 F.R.D. 346, 348 (D. Md. 1998) (disregarding "the technical name of the motion [to strike] and treat[ing] it as one to dismiss under Fed. R. Civ. P. 12(b)(6)" and citing cases). The court will disregard the

title of the pleading here as well and consider Defendant's challenges to the legal sufficiency of the Second Amended Complaint under Rule 12(b)(6) and its applicable standards.

### 1. Continuing Violations Theory[3]

The Second Amended Complaint alleges that Plaintiff's "removal from his employment in the [SEC] is directly related to and intrinsically intertwined with the SEC's failure to accommodate his many requests for schedule and workplace flexibility, and his attempt to secure a part-time telework position during the period he was recovering from serious illness from January 2009 until his hospitalization in May 2009." Second Am. Compl. ¶ 70. Plaintiff further contends that his termination in October 2009 "was a result, in part, . . . of the SEC's failures to accommodate." *Id.* ¶ 72. "Such failures were continuing violations," he alleges. *Id.* ¶ 73.

Plaintiff is clear about when the "continuing violations" ended—with his termination in October 2009—but he is less clear about when they commenced and what prior denials comprise the "continuing violations." The Second Amended Complaint alleges that the accommodation denial that immediately preceded his termination occurred in the spring of 2009. *Id.* ¶¶ 44, 51. Before that, according to Plaintiff, "since the late 1990's," the SEC has refused repeatedly to grant Plaintiff the "modest accommodation of a slight variation in start and ending time." *Id.* ¶ 32. One such denial apparently occurred in 1999 or 2000 and another in early 2008, *id.* ¶¶ 30, 32, but otherwise, his pleading lacks specifics about the claimed "related [ ] and intrinsically intertwined" prior denials, *id.* ¶ 70.

Defendant argues that Plaintiff cannot rely on a "continuing violations" theory to support his failure-to-accommodate claim. Citing the Supreme Court's decision in *National Railroad*

---

[3] Local Civil Rule 7 permits the court to treat as conceded a motion to which no opposition is filed. The court, however, declines to exercise that discretion here with respect to Defendant's continuing violations argument because Plaintiff did contest that argument on the merits when he asked the court to reconsider its decision on the briefing schedule. *See* Mot. for Recons. at 4-5.

*Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), Defendant contends that "[t]he fact that plaintiff alleges that he made a number of accommodation requests unsuccessfully during his employment at [the] SEC over a time period exceeding a decade and half . . . does not convert these discrete acts into a continuing violation." Mot. to Strike at 19. Defendant also asserts that, under *Morgan*, the "continuing violations" doctrine applies only to a claim of hostile work environment, which Plaintiff has failed to adequately allege. *See id.*

Before *Morgan*, some courts had held, under what was known as the "continuing violations" doctrine, that employers could be held liable for conduct that ordinarily would be time barred so long as the untimely incident was part of an ongoing unlawful employment practice. *See Morgan*, 536 U.S. at 107. In *Morgan*, the Court rejected the "continuing violations" doctrine in cases involving discrete acts of discrimination under Title VII. *Morgan*, 536 U.S. at 113. The Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. The Court explained that, for statute of limitations purposes, a discrete discriminatory act occurs "on the day that it happened," *id.* at 110 (internal quotation marks omitted), and cited as examples of discrete acts "termination, failure to promote, denial of transfer, or refusal to hire," *id.* at 114. The Court contrasted these discrete acts with claims alleging a hostile work environment, which by their "very nature involve[ ] repeated conduct," *id.* at 115, and "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117. For hostile work environment claims, "[i]t does not matter, for purposes of the statute [of limitations], that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* at 117.

Courts have applied *Morgan*'s "discrete act" rule to failure-to-accommodate claims asserted, as here, under the Rehabilitation Act. *See Long v. Howard Univ.*, 512 F. Supp. 2d 1, 16 (D.D.C. 2007) (footnote omitted) (citing cases). As the court in *Long* stated:

> [M]any courts have held that an alleged failure to provide a requested accommodation under the Rehabilitation Act or the ADA is also a 'discrete act' under *Morgan* and thus cannot rest on a continuing violation theory to make it timely. In short, there is no principled basis for declining to apply *Morgan* to denials of requests for reasonable accommodation under the Rehabilitation Act or ADA.

*Id.* (citations omitted).

Applying *Morgan* here, Plaintiff cannot rely on a "continuing violations" theory to make actionable otherwise time-barred denials of reasonable accommodation, such as those that allegedly occurred in "the late 1990's" and in early 2008, Second Am. Compl. ¶¶ 30, 32. Indeed, *Morgan* forecloses Plaintiff's averment that "the ongoing failure to accommodate was a continuing violation." *Id.* ¶ 73. Therefore, to the extent Plaintiff seeks in Count I to assert a "continuing violations" claim under the Rehabilitation Act, that claim is dismissed.

Alternatively, Plaintiff's reference to "continuing violations" might conceivably be construed to assert a hostile work environment claim premised on recurring failures to accommodate. *See Floyd v. Lee*, 85 F. Supp. 3d 482, 517 (D.D.C. 2015) (citation omitted) ("The prolonged denial of a reasonable accommodation can underlie a hostile work environment claim when 'all the circumstances' would support such a claim."). But such an interpretation would read into the Second Amended Complaint a claim—that although conceivable—is not at all apparent on the face of the pleading. Plaintiff never used the words "hostile work environment" in connection with his failure-to-accommodate claim under the Rehabilitation Act. *See* Second Am.

Compl. ¶¶ 68-73.[4]  Nor did he argue that he had asserted a hostile work environment claim when he opposed Defendant's *Morgan* argument in one of his motions that sought more time to respond. *See* Mot. for Recons. at 4.  Though Plaintiff is *pro se*, he is a lawyer, Compl. ¶ 6, who has brought numerous employment discrimination actions against the SEC.  Presumably, if he intended to bring a hostile work environment claim, as he has in the past, *see Koch v. Schapiro*, 669 F. Supp. 2d 3, 14-15 (D.D.C. 2010) (dismissing hostile work environment claim), he would have done so explicitly.

But even if Plaintiff's pleading could be construed to allege a hostile work environment claim based on repeated failures to accommodate, the court would dismiss it for failure to state a claim.  In determining whether a plaintiff has alleged such a claim, the court first must decide which otherwise time-barred complaints can be considered under *Morgan* as "'part of the same actionable hostile environment claim.'"  *Baird v. Gotbaum*, 662 F.3d 1246, 1251-52 (D.C. Cir. 2011) (quoting *Morgan*, 536 U.S. at 120).  In *Baird*, the Court of Appeals held that earlier, time-barred incidents "can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked into a coherent hostile environment claim—if, for example, they 'involve[ ] the same type of employment action, occur[ ] relatively frequently, and [are] perpetrated by the same managers.'"  *Id.* at 1251 (quoting *Morgan*, 536 U.S. at 120-21).  Here, Plaintiff claims that "the SEC" has denied him reasonable accommodation "since the late 1990's."  Second Am. Compl. ¶ 32.  To support this assertion, he avers that, in August 2000, after multiple refusals of reasonable accommodations, "SEC management" placed him on a one-week suspension.  *Id.* ¶ 33. He also contends that, in 2008, "[a]s a result of the SEC's stonewalling the accommodation request, [he] had to discontinue [a] cardiac rehabilitation program."  *Id.* ¶ 30.

---

[4] In contrast, Plaintiff does use the words "hostile work environment" in connection with his claim that he was discriminated against based on his disability, age, and religion.  *See* Second Am. Compl. ¶ 76.

The court has considered the above allegations, as well as the Second Amended Complaint in its entirety, and finds that there is simply no discernable "common thread" that "adequately links" together otherwise time-barred complaints with the events in 2009 that culminated in Plaintiff's termination.  For instance, the 2009 denial of accommodation involved SEC employees Laura Stomski and Tom Funciello, Second Am. Compl. ¶¶ 47-48, 51, 54, whereas the only person Plaintiff identifies as involved in the pre-2009 events was his supervisor, Richard Pfordte, *id.* ¶ 31.  Additionally, Plaintiff's earlier requests for accommodation apparently involved "a slight variation in start and ending time," *id.* ¶ 32, whereas his 2009 accommodation request was for a "part-time telework arrangement," *id.* ¶ 44.  Nothing ties these events together, except for the general contention that for years the SEC denied him reasonable accommodations.  Such a conclusory assertion is not enough to establish a coherent hostile work environment claim.  *See Baird*, 792 F.3d at 171 (affirming dismissal of a hostile work environment claim and holding that "intermittent spats identified in [plaintiff's] complaints, however—spanning eight years and involving different people doing different things in different contexts—have little to do with each other").

What remains then to support a hostile work environment claim are those events in 2009 that preceded Plaintiff's termination.  But these events are not sufficient to allege such a claim.  To establish a hostile work environment claim, a plaintiff must assert facts establishing that "[her] workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (internal quotation marks omitted).

Other than the alleged denial of accommodation prior to Plaintiff's termination, the only workplace hostility that Plaintiff asserts was directed towards him during 2009 came at the hands

of Tom Funciello, chief of employee relations at the SEC. According to Plaintiff, without seeking SEC approval, Plaintiff contacted Dr. Neal Presant, the Federal Occupational Health consultant for the SEC, to ask about the SEC's request for documentation about his absence from work. Second Am. Comp. ¶ 47. When Funciello learned that Plaintiff had directly contacted Dr. Presant, Funciello allegedly became "enraged" and "angrily chastised Koch." *Id.* ¶ 47.

These allegations, even when viewed alongside the denial of reasonable accommodation, fall well short of alleging a hostile work environment. The Court of Appeals consistently has held that ordinary workplace indignities, such as "petty insults, vindictive behavior, and angry recriminations" are not actionable. *Brooks v. Grundmann*, 748 F.3d 1273, 1277-78 (D.C. Cir. 2014) (citation omitted) (internal quotation marks omitted). After all, federal employee protection laws were not meant to impose a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). At most, Plaintiff has alleged that Funciello overreacted to Plaintiff's direct contact with Dr. Presant. That allegation, plus the denial of accommodation, does not rise to the level of a hostile work environment. Thus, to the extent Plaintiff has asserted in Count I a hostile work environment claim, it is dismissed.

2. Bivens *Claim*[5]

Plaintiff's *Bivens* claim is premised on the theory that four SEC employees violated his Fourth Amendment right to be free from unreasonable search and seizure by monitoring his comings and goings from the SEC facility using the records generated by his agency-issued security card, or "swipe card." Second Am. Compl. ¶¶ 89-90. Plaintiff has not alleged a cognizable *Bivens* claim for at least two reasons.

---

[5] Plaintiff has not served any of the four Individual Defendants, and thus none are before the court. However, because Defendant Mary Jo White has appeared in her official capacity as the Chairwoman of the SEC and the allegations against the Individual Defendants concerns conduct connected to their employment at the SEC, and Plaintiff has offered no opposition, the court will consider her arguments for dismissing the *Bivens* claim.

First, Plaintiff's claim is foreclosed by the CSRA. That conclusion should come as no surprise to Plaintiff, because only three years ago, Judge Friedman reached that very same conclusion in a separate case in which Plaintiff asserted a *Bivens* claim for an alleged due process violation. As Judge Friedman explained: "The Supreme Court and the D.C. Circuit have held that the CSRA, which establishes 'an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations,' constitutes 'a special factor that preclude[s] creation of a *Bivens* remedy.'" *Koch v. White*, 967 F. Supp. 2d 326, 335 (D.D.C. 2013) (quoting *Davis v. Billington*, 681 F.3d 377, 381 (D.C. Cir. 2012); *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). Plaintiff therefore has not stated a cognizable *Bivens* claim. *See id.* at 335-36.

Second, even if not foreclosed by the CSRA, Plaintiff's *Bivens* claim must be dismissed because he has failed to assert an underlying constitutional violation. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (directing courts to "weed out" *Bivens* suits "expeditiously"). Plaintiff avers that he "had a reasonable expectation of privacy" in the swipe card data maintained by the SEC. Second Am. Compl. ¶ 89. But a subjective "expectation of privacy does not give rise to [a] Fourth Amendment protection . . . unless society is prepared to accept that expectation as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39-40 (1988). The Supreme Court has held that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979), "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed," *United States v. Miller*, 425 U.S. 435, 443 (1976) (citations omitted).

Here, Plaintiff had no reasonable expectation of privacy in entry records maintained by the SEC. A federal employee who enters a federal facility using a security card surely knows that his

entry creates a record and that this record belongs to the agency that employs him. By using the card to enter the facility, a federal employee voluntarily conveys information of his presence to his employer. Such record of an employee's arrival at a public facility, without greater intrusion, is not accorded Fourth Amendment protection. *E.g.*, *compare United States v. Knotts*, 460 U.S. 276, 281 (1983) (holding that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another") *with United States v. Jones*, 132 S. Ct. 945 (2012) (holding that affixing GPS tracking device to a car and using it to monitor the car's movements was a search within the meaning of the Fourth Amendment). Plaintiff's *Bivens* claim therefore is dismissed.

## IV.     CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Motion to Strike is granted in part and denied in part. To the extent Defendant's Motion to Strike seeks dismissal of the Second Amended Complaint in its entirety, the Motion is denied. As to those arguments contained in the Motion that the court treated under Rule 12(b)(6), the Motion is granted. Count IV of the Second Amended Complaint is hereby dismissed, as is Count I to the extent it is premised on a "continuing violations" theory of liability.

It is further ordered that Plaintiff shall re-file on the record the Second Amended Complaint, in its entirety, within fourteen days of this date. Failure to do so may result in dismissal of this action. The time for Defendant to file her responsive pleadings shall not commence until Plaintiff files the Second Amended Complaint in its entirety.

Date: September 29, 2015

Amit P. Mehta
United States District Judge