# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

———————————————————— )
RANDOLPH S. KOCH, )
 )
 Plaintiff, )
 )
 v. )     Case No. 12-cv-01934 (APM)
 )
MARY JO WHITE, et al., )
 )
 Defendants. )
———————————————————— )

## MEMORANDUM OPINION

This is a mixed case appeal of a Merit Systems Protection Board decision arising from the termination of Plaintiff Randolph S. Koch's employment with the U.S. Securities and Exchange Commission. Plaintiff filed administrative complaints alleging that, by failing to provide him a reasonable accommodation for his disability and terminating his employment, Defendant Mary Jo White, acting in her official capacity as Chairwoman of the U.S. Securities and Exchange Commission, discriminated against him based on his disability, age, and religion and retaliated against him for engaging in protected activity. The Board concluded that Plaintiff's firing was not the result of discrimination or retaliation but, rather, Plaintiff's own misconduct. In the process of making that determination, the Board declined Plaintiff's requests to dismiss the appeal without prejudice or otherwise postpone proceedings in light of Plaintiff's medical conditions. Plaintiff has appealed on the grounds that (1) the Board's decision was arbitrary and capricious, not in compliance with legal procedures, unsupported by substantial evidence, or otherwise not in accordance with law, and (2) Defendant's conduct violated several federal antidiscrimination statutes.

Now before the court is Defendant's unopposed Motion for Summary Judgment. Plaintiff, proceeding pro se, has not filed an opposition to Defendant's motion, but has filed several motions for extensions of time.[1] After thorough consideration of the record, the court grants Defendant's Motion and denies Plaintiff's motions.

## I.    BACKGROUND

Plaintiff, formerly employed by the U.S. Securities and Exchange Commission ("SEC"), claims to suffer from several medical conditions, including coronary artery disease, hypertension, diabetes, a clotting disorder, gout, sleep apnea, Delayed Sleep Phase Disorder, circadian rhythm disorder, Attention Deficit Disorder, and arthritis in his foot. *See* Third Am. Compl., ECF No. 64 [hereinafter Third Am. Compl.], ¶¶ 11–17, 19–20, 83. Because of these medical conditions, Plaintiff found it difficult to come to work on time, or at all. *See id.* ¶¶ 34–35, 65–67.

Plaintiff claims that he modified his schedule to ensure he met his professional obligations and sought assistance from the SEC to accommodate his needs. He asserts that he made up any time he missed from work by working additional hours outside his set schedule. *See id.* ¶¶ 22, 39. At the same time he was working late to make up lost hours, Plaintiff claims, his colleagues were permitted to leave work for extended lunch periods, go for coffee, or exercise during work hours without repercussion. *Id.* ¶¶ 36–38, 82. In general terms, Plaintiff also alleges that he made multiple requests for schedule and workplace flexibility accommodations in light of his medical disability, but those requests largely were ignored or denied. *See id.* ¶¶ 59, 61, 84; *cf. id.* ¶¶ 59–60 (indicating that Plaintiff received an accommodation in the form of an adjustment of his arrival time, but he subsequently deemed that accommodation insufficient). More specifically, Plaintiff

---

[1] The court grants Plaintiff's motions to treat the untimely motions as timely filed, but denies the underlying motions for extensions of time. *See infra* III.B.

made at least two requests for a part-time telework arrangement during the first half of 2009.[2]  He purportedly made one request in January 2009 and a second in June 2009.  The SEC denied Plaintiff's January 2009 request, *see id.* ¶¶ 72, 77, and closed out Plaintiff's June 2009 request after Plaintiff failed to engage in the interactive process, *see* Notice of Filing of Exs. Under Seal, ECF No. 88 [hereinafter Notice of Exs.], Ex. G, ECF No. 88-6 [hereinafter Ex. G], at 27 (SEC Final Agency Decision).[3]

Plaintiff's unscheduled comings and goings from work did not go unnoticed.  On June 5, 2008, the SEC began an investigation into allegations that Plaintiff was not adhering to his set schedule.  Def.'s Mot. for Summ. J., ECF No. 87 [hereinafter Def.'s Mot.], at 4–25 [hereinafter Stmt. of Undisputed Material Facts], ¶ 2; Public Notice of Filing Ex. A Under Seal, ECF No. 101, Ex. A Pt. 1, ECF No. 101-1 [hereinafter Ex. A. Pt. 1].  Nine months later, the SEC's investigation concluded that Plaintiff "violated the Standards of Conduct as well as [SEC] policy and rules with his excessive, unauthorized absences from duty."  Ex. A. Pt. 1 at 18.  The SEC's investigation relied upon electronic gate data ("turnstile data") from April 1 to November 5, 2008, which showed that Plaintiff "regularly failed to follow [his] tour of duty and that on multiple occasions [he] failed to work the number of hours [he] reported as work hours on [his] official time record."  Notice of Exs., Ex. B, ECF No. 88-1 [hereinafter Ex. B], at 1.  Specifically, "there were 16 occasions (over 36 hours total) when [Plaintiff] failed to work the number of hours [he] reported on [his] official time record and 78 occasions when [he] failed to follow [his] tour of duty."  Ex. B at 1.  Additionally, between April 1 and July 14, 2008, Plaintiff did "not once arrive[] to work on time,"

---

[2] Plaintiff also specifically alleges that he sought accommodation in June 1994 by having his cardiologist, Dr. Kuhn, write a letter to his immediate supervisor, Frank J. Donaty, Jr., recommending Plaintiff's work be limited to 40 hours per week on a more flexible schedule in light of his medical condition.  *See* Third Am. Compl. ¶ 52.  This allegation, however, is qualified as a "separate claim [that] is before the D.C. Circuit now as Appeal No. 11-5101."  *Id.*  Accordingly, the court does not address any claim of disability-based discrimination flowing from this allegation.
[3] All pin citations to defense exhibits correspond to the bolded page number in the lower right corner of the document.

and "arrived to work late and/or left work early without taking approved leave, for a total of 112.67 hours." Ex. A Pt. 1 at 3. Further, the SEC concluded Plaintiff had submitted insufficient documentation to justify his absence from work from March 2 to May 1, 2009. Ex. B at 2. As a result of the investigation's findings, the SEC issued a Notice of Proposed Removal from Federal Service to Plaintiff on June 15, 2009. *See id.* After Plaintiff submitted oral and written replies to the Proposed Removal, the SEC issued its Final Decision of Removal, explaining that Plaintiff's employment would be terminated, effective October 13, 2009, for falsely reporting his work hours, being excessively absent without leave, failing to adhere to his set hours of employment, and inappropriately using official time. Stmt. of Undisputed Material Facts ¶¶ 4–6; Notice of Exs., Ex. D, ECF No. 88-3 [hereinafter Ex. D].

Plaintiff, believing the SEC's reasons for firing him to be pretext for discrimination and retaliation, filed two formal administrative complaints with the SEC's Equal Employment Opportunity Office ("EEO Office"). He alleged that, by failing to provide a reasonable accommodation for his disability in response to his June 2009 request and terminating his employment, the SEC had discriminated against him based on his age, religion, and disability and retaliated against him for engaging in protected activity. Stmt. of Undisputed Material Facts ¶¶ 7–8; Notice of Exs., Ex. E, ECF No. 88-4 [hereinafter EEO Compl. 18-09-09]; Notice of Exs., Ex. F, ECF No. 88-5 [hereinafter EEO Compl. 04-10-10]. The EEO Office consolidated Plaintiff's filings into a single administrative complaint and opened an investigation. Stmt. of Undisputed Material Facts ¶¶ 7–9. It read Plaintiff's EEO Complaints, collectively, as raising three issues: (1) "[w]hether the SEC discriminated against [Plaintiff] in retaliation for prior EEO activity when it issued him a proposed removal dated June 15, 2009"; (2) "[w]hether the SEC discriminated against [Plaintiff] by denying him a reasonable accommodation for his disability (physical) on or

about June 17, 2009"; and (3) "[w]hether the SEC discriminated against [Plaintiff] based on his age (DOB 5/17/74), disability (physical), religion (Jewish) and/or in retaliation for prior EEO activity when it terminated his employment with the SEC on or about October 6, 2009." *See* Ex. G at 5–6. After conducting an investigation as to each claim, the EEO Office determined Plaintiff had failed to establish the SEC discriminated or retaliated against him. *See id.* at 26–28.

Plaintiff appealed the EEO Office's decision to the Merit Systems Protection Board ("MSPB" or "the Board"). The parties agreed to suspend the appeal's progress for 30 days to allow for additional time to conduct discovery. Stmt. of Undisputed Material Facts ¶ 17. After the case resumed, Plaintiff twice moved to dismiss the appeal without prejudice in light of his medical conditions, but the Administrative Law Judge ("ALJ") assigned to the case denied both requests. *Id.* ¶¶ 21, 23; Notice of Exs., Ex. K, ECF No. 88-10 [hereinafter Ex. K], at 1; Notice of Exs., Ex. J, ECF No. 88-9 [hereinafter Ex. J], at 17–18. With respect to these requests, the ALJ explained that Plaintiff had had sufficient time to conduct discovery while the case was suspended and had not supplied any reason why he would be unable to participate in the appeal, as scheduled. *See* Ex. K at 1; Ex. J at 18. Plaintiff subsequently restyled his request for a dismissal without prejudice as a "reasonable accommodation" of his disabilities, claiming that the accommodation was warranted "so that he may participate in discovery as well as the adjudication of his appeal." Stmt. of Undisputed Material Facts ¶ 24; Ex. J at 18. The ALJ denied this request, too, leading Plaintiff to file a complaint that he had been discriminated against in the adjudication of a case before the MSPB. Stmt. of Undisputed Material Facts ¶¶ 25, 28; Ex. J at 18–19.

In her Initial Decision, the ALJ concluded that all Plaintiff's claims were without merit. First, the ALJ determined that the SEC properly relied upon the turnstile data in deciding to remove Plaintiff from his position and that evidence supported each charge against Plaintiff. Ex. J at 3–9;

Stmt. of Undisputed Material Facts ¶¶ 47, 56, 60, 64–65. Second, the ALJ concluded that there was no evidence that the SEC retaliated against him or discriminated against Plaintiff based on his disability. Ex. J at 10–12, 15–17; Stmt. of Undisputed Material Facts ¶¶ 66–68. The ALJ did not make any findings of fact or conclusions of law concerning Plaintiff's age- or religion-based discrimination claim. Third, with respect to the allegation of discrimination in the adjudication of a board case, the ALJ ruled that, in the absence of any medical evidence demonstrating that Plaintiff's medical conditions would improve by the date he requested to automatically refile his appeal, Plaintiff had not satisfied the "good cause" standard that would entitle him to modification of the appeals process. *See* Ex. J at 19–21; Stmt. of Undisputed Material Facts ¶¶ 29, 33–38; 5 C.F.R. § 1207.170(b)(3) (giving the ALJ to whom the case is assigned authority to "decide the merits of any timely allegation that is raised at this stage of adjudication, and . . . [to] make findings and conclusions regarding the allegation either in an interim order or in the initial decision, recommended decision, or recommendation").

Plaintiff continued to pursue his administrative remedies. He appealed the ALJ's decision to the full Board, but the Board concluded that the evidence supported the ALJ's conclusions as to the SEC's justification for Plaintiff's removal, and the ALJ had not abused her discretion with respect to Plaintiff's requests to dismiss the appeal without prejudice. Stmt. of Undisputed Material Facts ¶¶ 69–70, 76–77, 89; Def.'s Mot., Ex. M, ECF No. 87-1 [hereinafter Ex. M]. Accordingly, Plaintiff's petition for review was denied. Lastly, Plaintiff appealed the ALJ's Initial Decision and the full Board's denial of his petition to the EEOC's Office of Federal Operations ("OFO"). The OFO concluded that, on the record presented, Plaintiff had failed to show his removal was the result of retaliation or discrimination based on his age, religion, or disability. Stmt. of Undisputed Material Facts ¶¶ 92–97; *Koch v. Schapiro*, Pet. No. 0320120014, 2012 WL

5426901, at *2–3 (E.E.O.C. Oct. 26, 2012). Plaintiff subsequently filed suit in federal court. *See* Compl., ECF No. 1.

The wind-up to adjudication in this court has been drawn out by the filing of multiple pleadings and the granting of many motions for extensions of time. Plaintiff has filed four complaints over the course of more than three years. *See id.* (filed Nov. 29, 2012); Am. Compl., ECF No. 22 (filed June 13, 2014); Second Am. Compl., ECF No. 61 (originally filed Feb. 3, 2015; corrected Dec. 21, 2015); Third Am. Compl. (filed Jan. 4, 2016). Of relevance here, the court granted in part and denied in part Defendant's Motion to Strike Plaintiff's Second Amended Complaint, allowing Plaintiff's lawsuit to proceed on two of his four claims, as pleaded. *See* Mem. Op. & Order, ECF No. 49, at 16. The court subsequently permitted Plaintiff to file a Third Amended Complaint, which now is the operative pleading in this matter. *See* Minute Order, Feb. 9, 2016. Defendant then filed a Motion for Summary Judgment. *See* Def.'s Mot.

The court reaches Defendant's Motion after providing Plaintiff ample opportunity to respond. Defendant filed her Motion on November 21, 2016. *See id.* Plaintiff's Opposition was originally due on December 9, 2017. *See* Order, ECF No. 90. Plaintiff sought an extension to January 9, 2017, to file his Opposition, which the court granted. *See* Pl.'s Mot. for Extension of Time, ECF No. 91 [hereinafter Pl.'s Mot. for Ext., ECF No. 91]; Minute Order, Dec. 12, 2016. Plaintiff then sought a second extension of time to February 6, 2017, to file his Opposition, which the court granted with the warning that no further extensions would be granted absent exceptional circumstances. *See* Pl.'s Mot. for Extension of Time, ECF No. 92 [hereinafter Pl.'s Mot. for Ext., ECF No. 92]; Minute Order, Jan. 11, 2017. That twice-extended deadline came and went. Plaintiff filed five additional motions between February 7 and April 21, 2017, seeking to justify further delay of this litigation. *See* Pl.'s Mot. for Extension of Time to File Opp'n & Cross-Mot., ECF

No. 93 [hereinafter Pl.'s Mot. for Ext., ECF No. 93]; Pl.'s Mot. for Order to Treat Pl.'s Mot. for

Extension of Time to File Opp'n & Cross-Mot. as Timely Filed, ECF No. 94 [hereinafter Pl.'s

First Mot. for Timeliness, ECF No. 94]; Pl.'s Mot. for Leave to File Late-Filed Mot., ECF No. 95

[hereinafter Pl.'s Second Mot. for Timeliness, ECF No. 95]; Pl.'s Sealed Mot. for Leave to File,

ECF No. 96, Pl.'s Mot. for Extension of Time to Mar. 31, 2017 to File Pl.'s Opp'n, ECF No. 96-1

[hereinafter Pl.'s Mot. for Ext., ECF No. 96-1]; Pl.'s Mot. for Extension of Time to File Resp. to

Def.'s Dispositive Mot. & to File Any Cross-Mot., ECF No. 97 [hereinafter Pl.'s Mot. for Ext.,

ECF No. 97].[4]  Defendant filed an Opposition to those motions in which Plaintiff sought an

extension of time to file his Opposition.  *See* Def.'s Opp'n to Pl.'s Mots. for Extension of Time,

ECF No. 100 [hereinafter Def.'s Opp'n].  To date, Plaintiff has not filed his Opposition to

Defendant's Motion for Summary Judgment.

## II.    LEGAL STANDARDS

### A.  District Court Review of Mixed Cases Before the MSPB

Mixed cases are those involving both an agency action reviewable by the MSPB (e.g.,

removal) and allegations that the action was motivated by discrimination prohibited by federal

statute, as outlined in the Civil Service Reform Act.[5]  *See* 5 U.S.C. §§ 7702, 7703(b)(2), (c).

Federal employees who bring mixed cases must fully exhaust the administrative remedies

available to them for both parts of their case, including those affiliated with the federal

antidiscrimination statutes and Civil Service Reform Act.  *See Evans v. U.S. Patent & Trademark

Office*, No. 16-1932, 2017 WL 829101, at *1 (D.D.C.), *appeal docketed*, No. 17-5062 (D.C. Cir.

---

[4] The court denied Plaintiff's Sealed Motion for Leave to File, ECF No. 96, only insofar as Plaintiff sought to file the attached Motion for an Extension of Time under seal.  *See* Minute Order, Apr. 12, 2017.  The court addresses the merits of the attached, unsealed motion—along with Plaintiff's other motions for extensions of time—*infra*.
[5] The parties agree that this is a "mixed case" properly before the district court.  *See Kloeckner v. Solis*, 568 U.S. ___, ___, 133 S. Ct. 596, 604 (2012); Def.'s Mot. at 2 ("This case is properly characterized as a 'mixed case,' i.e., plaintiff was discharged, which is a personnel action that is appealable to the MSPB, and plaintiff contends that his discharge violated one or more of the antidiscrimination statutes.").

Apr. 5, 2017). Fully appealing both claims to the MSPB constitutes exhaustion. *See White v. Tapella*, 876 F. Supp. 2d 58, 65 (D.D.C. 2012). The original decision of the ALJ is the final decision the district court reviews, unless the full Board has granted a subsequent petition for review. *See id.* If the full Board grants the petition, then the full Board's conclusions become the final decision the district court reviews. *Id.*

The court applies two standards of review in mixed cases. *Greenhouse v. Geren*, 574 F. Supp. 2d 57, 66 (D.D.C. 2008). With respect to the MSPB's decision, the court considers only whether the decision was "arbitrary or capricious, obtained without compliance with lawful procedures, unsupported by substantial evidence[,] or otherwise not in accordance with law." *Barnes v. Small*, 840 F.2d 972, 979 (D.C. Cir. 1988). In contrast, the court reviews the plaintiff's federal discrimination and retaliation claims de novo. *Id.*

### B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015).

In assessing a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent

evidence, setting forth specific facts showing that there is a genuine issue for trial" and that a reasonable jury could find in its favor. *Elzeneiny*, 125 F. Supp. 3d at 28 (citing Fed. R. Civ. P. 56(e)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

The court may not treat a plaintiff's failure to respond to a defendant's motion for summary judgment as a concession of the motion. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016); Fed. R. Civ. P. 56(e) advisory committee's 2010 note. Rather, "the [d]istrict [c]ourt must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP*, 843 F.3d at 505 (internal quotation marks omitted). The court may, however, treat any unaddressed factual statement in the defendant's motion as undisputed. *See id.* at 507; LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

## III.  DISCUSSION

As a preliminary matter, the court notes that the MSPB decision subject to this court's review is the original decision of the ALJ because the full Board denied Plaintiff's petition for review. *See* Ex. M at 8 (decision of the full Board denying petition for review). The ALJ's decision, however, did not address all the claims raised in Plaintiff's EEO Complaints or passed on by the SEC's Final Agency Decision. Additionally, Plaintiff has not appealed all aspects of the ALJ's decision. Accordingly, the court begins by parsing which claims are properly before it.

Plaintiff's Third Amended Complaint plainly challenges the ALJ's conclusions regarding the use of turnstile data to support termination of Plaintiff's employment and the sufficiency of the evidence supporting Plaintiff's firing, as well as the ALJ's determinations regarding postponement

or dismissal without prejudice of Plaintiff's appeal. Those issues are properly before the court. To the extent Plaintiff seeks to claim the ALJ discriminated and retaliated against him, *see* Third Am. Compl. ¶¶ 98, 114–15, however, this court will not review those allegations. Plaintiff raised and fully adjudicated those exact claims before the District Court for the District of Maryland nearly four years ago, and he cannot seek review or reversal of that court's conclusions here. *See Koch v. U.S. Merit Sys. Prot. Bd.*, No. 12-1590, 2013 WL 4008872 (D. Md. 2013), *aff'd*, 578 F. App'x 177 (4th Cir. 2014) (per curiam) (mem.).

Separately, Plaintiff has abandoned any claim that the SEC's failure to provide him a reasonable accommodation for his disability in response to his June 2009 request constituted discrimination within the meaning of section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791. Although Plaintiff consistently raised this issue throughout the administrative proceedings, his Third Amended Complaint contains neither a reference to a request for accommodation made in or about June 17, 2009, nor any claim that the MSPB's decision was erroneous as to that issue. Instead, Plaintiff complains specifically of a request made "[a]t the beginning of January 2009," and makes several other generalized statements about having made prior requests for accommodation. *See* Third Am. Compl. ¶¶ 59, 72, 84, 107–08, 117. Moreover, Plaintiff gave sworn deposition testimony on September 30, 2016, confirming that any accommodation request he made on June 19, 2009, was "not perfected and is not a part of a claim in this lawsuit." *See* Def.'s Mot., Ex. P, ECF No. 87-3, Ex. 1, at 13–14; *see also* Notice of Exs., Ex. O, ECF No. 88-12, at 22 (stating in response to Defendant's Interrogatories that Plaintiff e-mailed "Laura Stomski on or about June 19, 2009, concerning [his] request to telework and part time [sic]," but after receiving the letter proposing his removal from the SEC, he "knew that the SEC had no intention of granting an accommodation, since they were preparing to fire

[him,] . . . . [and, as such,] did not reply to Ms. Stomski.").[6]  Thus, the court treats this claim as abandoned.[7]

Next, the court notes that each administrative body to address Plaintiff's case has framed the issues involved differently, leaving some initial questions on the record as to which claims have been properly exhausted.  In addition to addressing whether the termination of Plaintiff's employment was the result of discrimination on the basis of Plaintiff's age, religion, or disability, the SEC's Final Agency Decision also assessed whether either the *proposal* to remove Plaintiff from service or his *actual* removal from service constituted retaliation.  *See* Ex. G at 5–6, 26–28; *see also* EEO Compl. 04-10-10.  The ALJ and full Board's decisions addressed neither whether the proposal of removal constituted retaliation, nor whether Plaintiff was discriminated against based on his age or religion.  *See* Ex. J; Ex. M.  However, the final administrative body to review Plaintiff's case—the OFO—ruled on all three claims of discrimination (age, religion, and disability), as well as Plaintiff's retaliation charge with respect to his actual removal, but did not address whether the proposal of removal was retaliatory.  *See Koch*, 2012 WL 5426901, at *2.  Thus, there is some confusion as to whether Plaintiff fully exhausted his claims that termination of his employment resulted from the SEC discriminating against him based on his age and religion, as well as whether the ALJ should have addressed whether the proposal to remove Plaintiff from the SEC was retaliatory.

The court will address Plaintiff's age- and religion-based discrimination claims, but will not address any charge that the proposal to remove Plaintiff from the SEC—as separate from his

---

[6] The court recognizes that there is some inconsistency on the record regarding whether the request was made on June 17 or June 19, 2009, but it is not material.

[7] The ALJ's decision also contained findings and conclusions of law concerning whether Plaintiff was retaliated against for being a whistleblower.  *See* Ex. J at 13–15.  Plaintiff's Third Amended Complaint does not contain any such allegations as a freestanding federal statutory claim or otherwise indicate that Plaintiff intends to appeal the MSPB's ruling on that issue.  Accordingly, that issue is not before the court.

actual removal—was the result of retaliation. Because Plaintiff plainly alleged age- and religion-based discrimination in his second EEO Complaint, *see* EEO Compl. 04-10-10, the court assumes Plaintiff raised those claims before the ALJ and thereby fully exhausted them. The court will not address any claim that the proposal to remove Plaintiff from service was in retaliation for his prior protected EEO activity: Such a charge does not appear in either EEO Complaint and, on the facts presented, the court does not view the proposal to remove Plaintiff as an action separate from the decision to actually remove Plaintiff.

Accordingly, in sum, the court will review (1) whether the ALJ committed reversible error in determining that (a) the SEC could rely on turnstile data, (b) the SEC had proved all charges against Plaintiff, and (c) the ALJ did not discriminate against Plaintiff on the basis of his disability by declining to grant his requests to dismiss his appeal without prejudice; and (2) whether, by terminating Plaintiff's employment, the SEC (a) discriminated against Plaintiff on the basis of his age, religion, or disability, or (b) retaliated against him for engaging in protected EEO activity. The court will not review any claim that the SEC discriminated against Plaintiff by denying him a reasonable accommodation in response to his request in or about June 19, 2009, or that the SEC issued the Notice of Proposed Removal in retaliation for Plaintiff's protected EEO activity.[8] Additionally, as discussed below, Plaintiff is foreclosed from pursuing a discrimination claim premised on a continuing violations theory. *See infra*.

## A.     Defendant's Motion for Summary Judgment

Defendant seeks an entry of summary judgment in her favor as to both the MSPB's procedural and substantive determinations. As noted above, the court reviews the ALJ's decision to determine whether it is arbitrary or capricious, contradicts established legal procedures, is

---

[8] Even if those claims were properly before the court, for the reasons discussed below, the court would enter summary judgment in favor of Defendant.

unsupported by substantial evidence, or otherwise fails to comply with the law. *See Barnes*, 840

F.2d at 979. In order to successfully defend the ALJ's ruling from such a challenge, Defendant

must show that there is a rational basis to support the ruling, and "the agency . . . could fairly and

reasonably find the facts that it did," even if another plausible interpretation would support a

contrary result. *See Adair v. Solis*, 742 F. Supp. 2d 40, 58–59 (D.D.C. 2010) (alteration in original)

(internal quotation marks omitted), *aff'd*, 473 F. App'x 1 (D.C. Cir. 2012) (per curiam).

    *1.    The MSPB's Decision*

        a.    Whether the ALJ's Determination that the SEC Could Rely on
              Turnstile Data was Legally Erroneous

Plaintiff challenges Defendant's reliance on turnstile data—which tracked his comings and

goings from work through the electronic gate/ID access system at the SEC—as contradicting

internal SEC policy. The Memorandum of Understanding ("MOU") between the SEC and

National Treasury Employees Union states that "[t]he use of the ID/Access Cards, and the data

collected therefrom, will not serve as a basis for monitoring time and attendance." *See* Ex. J at 3

(alteration in original) (internal quotation marks omitted). The ALJ determined that Defendant

could rely on Plaintiff's turnstile data without violating the MOU because Defendant had not

"monitored" Plaintiff's comings and goings from work. Looking to Merriam-Webster's Online

Dictionary for the commonly accepted definition of "monitor," the ALJ explained that the SEC

would only be "monitoring" its employees in violation of the MOU if the SEC was "watch[ing],

keep[ing] track of, or track[ing them] . . . for a special purpose"; Defendant, in contrast, had only

looked at the existing data after receiving specific complaints regarding Plaintiff's absence. *See*

*id.* at 3–4.

The court concludes the ALJ's interpretation of the word "monitoring" in the MOU is

neither arbitrary and capricious nor contradicted by existing law. Neither party has advanced any

prior interpretation of the MOU that would have bound the ALJ to reach a contrary conclusion, nor is this court aware of any. In the absence of controlling authority on this issue, the ALJ relied on a widely accepted dictionary's definition of the word "monitor" to interpret the MOU and reasonably distinguished between instances that fell within and outside that definition. The ALJ fairly and reasonably found that Defendant was not "monitoring" Plaintiff in violation of the MOU when she reviewed Plaintiff's turnstile data in response to allegations of misconduct, as opposed to affirmatively tracking his arrivals and departures from work and then lodging charges of misconduct. *See Adair*, 742 F. Supp. 2d at 58–59. Accordingly, the court affirms the ALJ's ruling that Defendant could rely on the turnstile data to determine whether the SEC had substantiated all the charges against Plaintiff.

b. <u>Whether the ALJ's Determination that the SEC Proved All Charges Against Plaintiff was Legally Erroneous</u>

The ALJ determined that the SEC had proved by a preponderance of the evidence that Plaintiff falsely reported the hours he worked, was excessively absent without leave, failed to follow his set work hours, and inappropriately used official time. Relying on the turnstile data, the ALJ found that: (1) "on 16 occasions between April 11, 2008, and September 16, 2008, [Plaintiff] worked less than eight hours while reporting on his official time record eight regular hours of work time and no excused leave," despite "recognize[ing] his responsibility to provide leave slips when he was not going to be working"; (2) Plaintiff's absence on each of those 16 occasions was not authorized, and, separately, he failed to produce the medical evidence necessary to receive authorization for medical leave for the 45 days between March 2 and May 1, 2009, supporting a charge of being absent without leave; (3) pursuant to an existing accommodation, Plaintiff was required to be present at work from 10:30 a.m. to 7:00 p.m., Monday through Friday, but on 78 occasions between April 1 and November 5, 2008, he worked outside those hours and

had not received authorization to do so; and, (4) on six occasions between April 10 and October 2, 2008, Plaintiff "indicated on his official time record that he was working, but left his desk for significant periods of time." Ex. J at 4–9. In light of these findings, the ALJ concluded that the SEC had proved each charge against Plaintiff.

The court concludes that the ALJ's determination is not legally erroneous. As the court already explained, the ALJ did not err in concluding the SEC could rely upon the turnstile data to support its charges. Although Plaintiff asserts that the ALJ made an erroneous finding of fact when she concluded he intentionally falsified his attendance records, he submits no evidence to support this assertion. Instead, Plaintiff attempts to shift blame to his supervisor by alleging that he "had no responsibility for submitting time and attendance records. His supervisor did. His supervisor knew for years that [Plaintiff] followed the pattern of coming in late and working late." Third Am. Compl. ¶ 107. The court is unpersuaded that Plaintiff's supervisor's role in *submitting* attendance sheets in any way affects the analysis here. Even if Plaintiff's supervisor was responsible for certifying time and attendance records, Plaintiff was still responsible for coming to work during his assigned hours and accurately reporting the hours he worked. Moreover, Plaintiff's supervisor's observations of Plaintiff's failure to adhere to his set hours does not alleviate Plaintiff of his responsibilities. To the extent Plaintiff claims that the fact he worked additional hours forecloses a charge of falsifying hours, the court rejects that theory. The record reflects that Plaintiff "was not given permission by [his supervisor] to unilaterally decide to come to work late and then make up those hours by staying past the close of his regular workday." Ex. A. Pt. 1 at 17. Plaintiff makes no other substantive arguments that the ALJ erred in reaching her

conclusions as to each charge.[9]   Accordingly, the court affirms the ALJ's ruling that the SEC

proved each charge against Plaintiff by a preponderance of the evidence.

c.   <u>Whether the ALJ's Denial of Plaintiff's Requests for Dismissal of the Appeal Without Prejudice was Legally Erroneous</u>

An ALJ has broad discretion in the management of her docket and scheduling of discovery

timelines for her cases, and a federal court will not disturb an ALJ's decision to deny a motion to

dismiss an appeal without prejudice absent a showing that she abused her discretion by so doing.

*See Minn. Mining & Mfg. Co. v. Barr Labs., Inc.*, 289 F.3d 775, 779 (Fed. Cir. 2002); *Green v.*

*Merit Sys. Prot. Bd.*, 155 F.3d 573, 573 (Fed. Cir. 1998) (per curiam) (unpublished).   At the time

the ALJ reviewed this case, federal regulations prohibited administrative cases before the MSPB

from being suspended for more than 30 days without the submission of a written request

accompanied by an affidavit or sworn statement providing "good cause" for the postponement.

*See* 5 C.F.R. §§ 1201.28(f), 1201.51(c) (2010).

Plaintiff alleges that the ALJ abused her discretion both when she denied his June 18, 2010,

request for his appeal to be dismissed without prejudice and automatically refiled on September

14, 2010, and when she denied his subsequent request for the same relief, restyled as a claim under

the Rehabilitation Act.   Plaintiff claims that he had a serious leg infection in May 2010 that

prevented him from adequately participating in the discovery process for 14 of the 30 days during

which the case was suspended for the very purpose of conducting discovery.   Third Am. Compl.

¶¶ 91–95.   Although Plaintiff's Third Amended Complaint does not explicitly seek review of the

---

[9] The only other allegation Plaintiff makes on this issue is that there is no evidence that the SEC "properly considered the suspension imposed on [Plaintiff] in 2000" or "gave any serious consideration to the letter submitted by one of [Plaintiff's] medical specialists, Norman Rosenthal, M.D., a renowned researcher in sleep disorders including sleep phase disorders." Third Am. Compl. ¶¶ 104, 106.  Plaintiff submits no evidence to support those statements, though, leading the court to dismiss them.  Plaintiff's allegations that he was denied a reasonable accommodation are addressed *infra*, in connection with Plaintiff's discrimination claims.

ALJ's denial of his July 6, 2010, request for a dismissal without prejudice, the court construes Plaintiff's pleading as seeking review of all three requests.

The ALJ did not abuse her discretion in denying Plaintiff's June 18, 2010, or July 6, 2010, requests for dismissal without prejudice, or his restyled request on July 11, 2010, for the same relief under the Rehabilitation Act. With respect to the first request, the ALJ appropriately concluded that she had already granted the parties' request for a 30-day suspension to conduct discovery, and Plaintiff's submission—a doctor's statement that he would be unable to participate in discovery until July 1, 2010—did not provide "a showing of good cause" as to why he and his attorney had not already substantially completed discovery or why he could not meet the deadline of a July 26, 2010, hearing. *See* 5 C.F.R. § 1201.51(c) (2010); Ex. J at 17–18. Additionally, the ALJ did not abuse her discretion in denying Plaintiff's second request for dismissal without prejudice, despite his submission of additional medical evidence, because that evidence did not reflect that granting Plaintiff's requested relief—effective postponement of the appeal until September 14, 2010—would mitigate Plaintiff's concerns, as the evidence submitted showed only that Plaintiff suffered from severe, chronic conditions that were unlikely to dissipate by the requested date for reinstatement of the appeal. *See* Ex. J at 18. As such, Plaintiff's second request did not satisfy the "good cause" standard that would allow the ALJ to modify the appeals process after an initial 30-day suspension. *See* 5 C.F.R. §§ 1201.28(f), 1201.51(c) (2010). Lastly, although Plaintiff subsequently restyled his request as one for a reasonable accommodation within the meaning of the Rehabilitation Act, that characterization does not change the content of Plaintiff's request. For the same reasons, the ALJ properly determined that request also failed to satisfy the "good cause" standard necessary to modify the appellate process before the MSPB. *See* Ex. J at 18–19. Indeed, the ALJ's prediction that Plaintiff's medical conditions would persist beyond

September 10, 2014, has borne out; those conditions have persisted for and substantially increased the length of this litigation. Thus, the ALJ's conclusions do not rise to the level of an abuse of discretion. *See Minn. Mining & Mfg. Co.*, 289 F.3d at 779; *Green*, 155 F.3d at 573.

Accordingly, the court affirms the ALJ's conclusion that Plaintiff was not discriminated against in the adjudication of a case before the MSPB when the ALJ denied Plaintiff's requests for dismissal of his appeal without prejudice or other postponement of the proceedings.

### 2. *Plaintiff's Discrimination Claims*

Defendant moves for an entry of summary judgment in her favor as to each count in Plaintiff's Third Amended Complaint. Plaintiff raises three claims: (1) failure to accommodate Plaintiff's disability, in violation of the Rehabilitation Act, "by repeatedly refusing to grant Plaintiff accommodations to his time and attendance requirements" and denying him a telework arrangement, leading to the wrongful termination of his employment; (2) discrimination on the basis of age, religion, and disability, in violation of the Age Discrimination in Employment Act of 1972 ("ADEA"), 29 U.S.C. § 633a, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16, and Rehabilitation Act, by terminating Plaintiff's employment for tardiness and being absent without leave while allowing other employees who were not disabled, not Jewish, and younger than Plaintiff to be repeatedly absent without leave or spend work hours on personal matters; and (3) retaliating against Plaintiff for engaging in protected EEO activity, in violation of the ADEA, Title VII, and Rehabilitation Act, by investigating him and terminating his employment in response to his efforts to seek accommodation for his disability. Third Am. Compl. ¶¶ 116–17, 119, 123, 125–26, 129–32.

For the reasons that follow, the court concludes that the law-of-the-case doctrine bars Plaintiff's first claim, and Plaintiff's remaining claims fail on the merits.

a.      Law-of-the-Case Doctrine Bars Plaintiff from Raising a Continuing
        Violations Theory for Relief Based on Untimely Claims

The court's ruling on Plaintiff's Second Amended Complaint places important limitations on this litigation. Under the law-of-the-case doctrine, when the court is confronted for a second time with an issue on which it previously ruled in the same case, it should reach the same result. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).

In a prior Memorandum Opinion in this matter, the court dismissed Count I of the Second Amended Complaint because Plaintiff sought to rely on the "continuing violations" doctrine to seek relief for untimely complaints regarding the SEC's failure to provide him a reasonable accommodation for his disabilities. *See* Mem. Op. & Order, ECF No. 49, at 2. The court explained that Plaintiff could not seek relief under the Rehabilitation Act for discriminatory acts the SEC purportedly took against him prior to his termination in 2009 because those claims were time barred, and Plaintiff's allegation that the acts were ongoing throughout his employment, culminating in his termination, did not render them timely. *See id.* at 9–11 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Further, the court explained that "even if Plaintiff's pleading could be construed to allege a hostile work environment claim based on repeated failures to accommodate," Plaintiff had failed to state a plausible claim because "there is simply no discernable 'common thread' that 'adequately links' together otherwise time-barred complaints with the events in 2009 that culminated in Plaintiff's termination." *Id.* at 12–14.

The law-of-the-case doctrine bars Plaintiff from taking a second bite at the "continuing violations" apple. Accordingly, because Count I of Plaintiff's Third Amended Complaint seeks relief under the Rehabilitation Act for Defendant's alleged repeated refusal to accommodate Plaintiff's disability prior to the termination of Plaintiff's employment in October 2009 and raises no other issue properly before the court, *see* Third Am. Compl. ¶¶ 119–20, the court enters

summary judgment in favor of Defendant as to that Count. Additionally, to the extent Count II

seeks relief under the ADEA, Title VII, or the Rehabilitation Act based on continuous, non-specific

acts of discrimination prior to the termination of Plaintiff's employment, *see id.* ¶¶ 124, 127, the

court also enters summary judgment in favor of Defendant as to that Count.

> b.      Whether Defendant Discriminated Against Plaintiff Based on his
> Disability, Age, or Religion by Terminating Plaintiff's Employment

The ADEA, Title VII, and Rehabilitation Act collectively prevent employers, including the

federal government, from taking an adverse employment action against an employee based on the

employee's age, race, color, religion, sex, national origin, or disability. *See* 29 U.S.C. §§ 633a,

791; 42 U.S.C. §§ 12112, 2000e-2, 2000e-16. When an employee has suffered an adverse

employment action, and the employer has advanced a legitimate, nondiscriminatory reason for that

action as part of a motion for summary judgment, the court need only determine whether the

plaintiff has "produced evidence sufficient for a reasonable jury to find that the employer's stated

reason was not the actual reason [for the adverse action] and that the employer intentionally

discriminated against [the plaintiff] based on" his or her protected characteristic. *See Baloch v.

Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (internal quotation marks omitted). The

plaintiff's allegations of facts of which he has personal knowledge, if set forth in a verified

complaint, have "the same evidentiary value as a plaintiff's affidavit or sworn declaration" and

may be relied upon in opposing a motion for summary judgment. Allegations in an unverified

complaint, however, do not have that value and may not be relied upon to defend against such a

motion. *See Grimes v. District of Columbia*, 794 F.3d 83, 94 n.5 (D.C. Cir. 2015); Fed. R. Civ. P.

56(c)(4).

Plaintiff suffered an adverse employment action when he was removed from his position

at the SEC and Defendant has advanced four legitimate, non-discriminatory reasons for Plaintiff's

removal: (1) falsely reporting hours; (2) excessive absences without leave; (3) failing to follow the set tour of duty; and (4) inappropriately spending working hours on personal matters. *See* Ex. B; Ex. D; Stmt. of Undisputed Material Facts ¶ 4. Thus, the only question before the court is whether Plaintiff has advanced sufficient evidence for a reasonable jury to find Defendant's stated reasons to be pretext for discrimination.

Plaintiff has not met his burden. Although he makes various, loose allegations of discrimination throughout his unverified Third Amended Complaint, Plaintiff cannot rely on those allegations in response to Defendant's Motion for Summary Judgment. *See Grimes*, 794 F.3d at 94 & n.5. Defendant not only advances legitimate, non-discriminatory reasons for Plaintiff's removal, but also buttresses those justifications with sworn declarations from Barry Miller and Andrew Donohue, who made the decision to fire Plaintiff. In those declarations, Miller and Donohue state that Plaintiff's age, religion, and disability in no way influenced the decision to remove Plaintiff from his position. *See* Notice of Exs., Ex. H, ECF No. 88-7 [hereinafter Ex. H], at 36–37; Notice of Exs., Ex. I, ECF No. 88-8 [hereinafter Ex. I], at 24–30; Notice of Exs., Ex. L, ECF No. 88-11 [hereinafter Ex. L], ¶¶ 10–11. In the absence of any Opposition or contradictory evidence, the courts treats Defendant's Statement of Undisputed Material Facts as true. *See Winston & Strawn, LLP*, 843 F.3d at 507. It was Plaintiff's burden to produce evidence sufficient for a reasonable jury to conclude Defendant's justifications were pretext for intentional discrimination based on Plaintiff's age, religion, or disability, *see Baloch*, 550 F.3d at 1198; *Grimes*, 794 F.3d at 93–94, but he has not done so. Accordingly, there is no triable issue of fact as to whether Defendant's stated reasons for Plaintiff's removal were Defendant's actual reasons. Plaintiff's discrimination claims fail.

The court also enters summary judgment on Plaintiff's hostile work environment claim. A successful hostile work environment claim requires the plaintiff to show that the defendant subjected the plaintiff to "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *See Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)). The court assesses the totality of the circumstances to determine whether a hostile work environment exists, including "the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* Plaintiff does not allege that Defendant's repeated failures to accommodate his disability constituted a hostile work environment.[10] Instead, he alleges that Defendant continuously persecuted Plaintiff for being untimely while allowing other employees who "were not disabled, not Jewish[,] and substantially younger than [Plaintiff]" to disregard their set work schedules. *See* Third Am. Compl. ¶ 123. However, Plaintiff does not submit his allegations as part of a verified complaint and, even if the Third Amended Complaint were verified, Plaintiff lacks personal knowledge of the mindset behind and reasons for Defendant's actions. Therefore, the allegations in Plaintiff's Third Amended Complaint cannot be used to combat Defendant's Motion. *See Grimes*, 794 F.3d at 94 n.5.

In light of the foregoing, the court enters summary judgment in favor of Defendant as to Count II of Plaintiff's Third Amended Complaint.

       c. <u>Whether Defendant Retaliated Against Plaintiff for Engaging in Protected Activity by Terminating Plaintiff's Employment</u>

---

[10] Even were the court to construe Plaintiff's pleading as alleging a hostile work environment premised on repeated failures to accommodate, as it has done previously, Plaintiff again falls short of showing that otherwise time-barred complaints are "part of the same actionable hostile environment claim." *See Baird v. Gotbaum*, 662 F.3d 1246, 1251–52 (D.C. Cir. 2011) (quoting *Morgan*, 536 U.S. at 120); Mem. Op. & Order, ECF No. 49, at 12–13.

Under the ADEA, Title VII, and the Rehabilitation Act, an employer unlawfully retaliates against an employee when the employer takes a materially adverse action against the employee because the employee brought or threatened to bring a discrimination claim. *See Baloch*, 550 F.3d at 1198. Where the defendant has asserted legitimate, nondiscriminatory reasons for a materially adverse action taken against an employee, the employee must advance sufficient evidence to discredit those reasons by showing the actions taken were retaliatory. *Id.* at 1200.

Plaintiff's retaliation claim cannot succeed. As just discussed, Defendant has advanced four legitimate, non-discriminatory reasons for Plaintiff's removal, but Plaintiff has not responded with any evidence to discredit those reasons and show that he was removed in response to his efforts to seek accommodation for his disability. Defendant has submitted sworn statements from Plaintiff's SEC superiors asserting that Plaintiff's prior EEO activity played no role in the decision to terminate his employment. *See* Ex. H at 36; Ex. I at 27–29; Ex. L ¶¶ 8–9, 11. Additionally, the SEC's investigative report reflects that Plaintiff's tardiness and failure to adhere to his set work schedule went on for roughly a decade, and his supervisors were "gener[ous]" in declining to terminate Plaintiff's employment sooner. *See* Ex. A Pt. 1 at 8–18, 44. Plaintiff advances no evidence to suggest Defendant's reasons are not the real reasons for his removal and, importantly, does not challenge the turnstile data.[11] As such, Plaintiff has not carried his burden, and the court enters summary judgment in Defendant's favor as to Count III of the Third Amended Complaint.

## B. Plaintiff's Motions for Extensions of Time

Plaintiff's Opposition to Defendant's Motion for Summary Judgment was due on February 6, 2017, *see* Minute Order, Jan. 11, 2017, but has yet to be filed. Between February 7 and April

---

[11] Although Plaintiff states that he "has had reason to believe the electronic gate data was not always accurate," Third Am. Compl. ¶ 102, he neither challenges the data from any particular day or time period, nor submits any other plausible statement of fact to support his belief that the turnstile data is inaccurate. Accordingly, the court treats the substance of the turnstile data as unchallenged.

21, 2017, Plaintiff filed three motions seeking additional extensions of time to file his Opposition. These motions are best characterized as raising three rationales for Plaintiff's delay: (1) Plaintiff's medical conditions prevented him from being able to file his Opposition; (2) Plaintiff was awaiting a response to his requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for additional turnstile data and e-mails from the SEC; and, (3) the SEC has destroyed information necessary to the resolution of Plaintiff's case. *See* Pl.'s Mot. for Ext., ECF No. 93; Pl.'s Mot. for Ext., ECF No. 96-1; Pl.'s Mot. for Ext., ECF No. 97. Additionally, Plaintiff filed two motions seeking to have the first and second of the motions for an extension of time treated as timely filed in light of technological difficulties with CM/ECF. *See* Pl.'s First Mot. for Timeliness, ECF No. 94 (seeking to have Pl.'s Mot. for Ext., ECF No. 93, treated as timely filed); Pl.'s Second Mot. for Timeliness, ECF No. 95 (seeking to have Pl.'s Mot. for Ext., ECF No. 96-1, treated as timely filed).

Defendant opposes Plaintiff's three motions for an extension of time and contends that Plaintiff is protracting the litigation in bad faith. Specifically, Defendant claims that Plaintiff has been citing his medical conditions as the reason for needing additional time to prepare his Opposition when, in reality, he has been using the additional time to obtain records from the SEC through a FOIA request and prepare a new argument premised on spoliation of evidence. *See* Def.'s Opp'n at 1–2.

Under Rule 6 of the Federal Rules of Civil Procedure, the court has discretion to extend filing deadlines. If a party makes a request for additional time "before the original time or its extension expires," then the court may extend the deadline "for good cause." *See* Fed. R. Civ. P. 6(b)(1)(A). When a party misses the original deadline and seeks an extension afterward, the court

may extend the deadline if there is "good cause" *and* the party shows that his or her failure to act is due to "excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B).

The court treats all the motions for extensions of time that Plaintiff filed between February 7 and April 21, 2017, as timely filed, but each of Plaintiff's three reasons for needing additional time to prepare and file his Opposition falls short of "good cause" justifying an extension of time.[12] First, although Plaintiff complains that medical ailments have prevented him from being able to properly research, draft, and file his Opposition, the court has given Plaintiff extensive time to do so, even going so far as to draft a schedule around Plaintiff's needs. *See* Minute Order, Dec. 12, 2016 (granting Plaintiff's Motion for Extension of Time and revising briefing schedule in light of Plaintiff's medical needs); Minute Order, Jan. 11, 2017 (same). Moreover, Plaintiff has demonstrated an ability to file lengthy, substantive pleadings during this very time period, as well as simultaneously pursue FOIA requests, severely undermining Plaintiff's assertion that his physical limitations prevent him from being able to file an Opposition to Defendant's Motion for Summary Judgment. *See* Pl.'s Mot. for Ext., ECF No. 93; Pl.'s Mot. for Ext., ECF No. 96-1; Pl.'s Mot. for Ext., ECF No. 97; Def.'s Opp'n, Ex. A, ECF No. 100-1; Def.'s Opp'n, Ex. B, ECF No. 100-2; Def.'s Opp'n, Ex. C, ECF No. 100-3; Def.'s Opp'n, Ex. D, ECF No. 100-4; *see also* Def.'s Opp'n at 4–5. Second, Plaintiff could have obtained the turnstile data and e-mails he now seeks in his FOIA requests during discovery in this case. Plaintiff had ample time to conduct discovery and should have reviewed Defendant's responses for potential deficiencies at the time he received them.[13] *Contra* Pl.'s Mot. for Ext., ECF No. 96-1, at 2. The court already denied Plaintiff's request

---

[12] Thus, Plaintiff's two motions to treat his first and second requests for an extension of time as timely filed are granted. *See* Pl.'s First Mot. for Timeliness, ECF No. 94; Pl.'s Second Mot. for Timeliness, ECF No. 95.

[13] To the extent Plaintiff's motions could be construed as a request to defer summary judgment for additional time to take discovery, *see* Fed. R. Civ. P. 56(d), the court declines to grant the motion on that basis. To warrant that type of relief, Plaintiff needed to submit an affidavit that (1) "outline[s] the particular facts he intends to discover and describe[s] why those facts are necessary to the litigation"; "explain[s] why he could not produce the facts in opposition to the motion for summary judgment"; and (3) "show[s] the information is in fact discoverable."

to reopen discovery, and it will not allow Plaintiff to circumvent that earlier ruling by seeking an extension of time now. *See* Minute Order, Oct. 20, 2016. Lastly, any claim of spoliation by the SEC is unsupported by the evidence and, in any event, does not justify further delay in the filing of Plaintiff's Opposition.

Accordingly, the court denies each remaining motion for an extension of time to file Plaintiff's Opposition. In short, dragging this litigation out for months on end prejudices Defendant and needlessly extends these proceedings. It was well within Plaintiff's control to seek during discovery the additional information he now wants extra time to obtain. Moreover, the court seriously questions whether Plaintiff continues to request extensions of time to file his Opposition in good faith, given the amount of time that has now passed and the incongruity between the limitations that Plaintiff's medical conditions purportedly place on him and Plaintiff's simultaneous, active FOIA requests. Accordingly, Plaintiff has not demonstrated "good cause" warranting an extension of time to file his Opposition to Defendant's Motion for Summary Judgment.[14]

---

*Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012) (alterations adopted) (internal quotation marks omitted). Plaintiff has made no such submission, and it is not clear to the court why Plaintiff could not obtain the information he now seeks before close of the discovery period; it was plainly available to him then. Accordingly, the court denies Plaintiff's motions insofar as they could be construed as a request for relief under Rule 56(d) of the Federal Rules of Civil Procedure.

[14] The court also denies Plaintiff's most recent motions for an extension of time to respond to Defendant's Opposition to Plaintiff's prior motions for extensions of time. *See* Pl.'s Mot. for Extension of Time to Apr. 28, 2017, to File Reply to Def.'s Opp'n to Pl.'s Mots. for Extension of Time, ECF No. 103 [hereinafter Pl.'s Mot. for Ext., ECF No. 103]; Pl.'s Mot. for Add'l Extension to May 8, 2017, to File Reply to Def.'s Opp'n to Pl.'s Mots. for a Further Extension of Time, ECF No. 104 [hereinafter Pl.'s Mot. for Ext., ECF No. 104]. Plaintiff primarily alleges that Defendant intentionally filed her Opposition during the Passover holiday to prevent Plaintiff from having adequate time to respond. Pl.'s Mot. for Ext., ECF No. 103, at 2–3; Pl.'s Mot. for Ext., ECF No. 104, at 2. Plaintiff advances no evidence of Defendant's animus other than that Defendant filed her Opposition on the proper deadline, April 14, 2017, *see* LCvR 7(b), which coincided with the Passover holiday. The court is unpersuaded that adhering to court procedure is evidence of animus. Plaintiff's only other substantive reason for seeking additional time to defend his motions for extensions of time is that he needs the extension to gather evidence of his medical conditions so that the court can understand that he is physically able to file FOIA requests, but not his Opposition. *See* Pl.'s Mot. for Ext., ECF No. 103, at 3; Pl.'s Mot. for Ext., ECF No. 104, at 2–3, 5. The court accepts Plaintiff's representation that his medical conditions cause him to take longer than the average litigant to file his pleading. At this juncture, however, Plaintiff has had the benefit of several formal extensions of time and approximately three additional months in which to file his Opposition. Instead, he has filed multiple, multi-page motions for extensions of time, and now seeks an

## IV.    CONCLUSION

In light of the foregoing, the court grants Plaintiff's motions to treat his untimely motions as timely filed, but denies Plaintiff's motions for extensions of time and grants Defendant's Motion for Summary Judgment.  A separate Order accompanies this Memorandum Opinion.

Dated:  May 2, 2017

Amit P. Mehta
United States District

---

extension to file a Reply in support of those motions for extensions.   The court simply is unconvinced that additional time will assist Plaintiff in filing his Opposition to Defendant's Motion for Summary Judgment at any point in the near future.   Accordingly, the court also denies Plaintiff's two most recent motions for an extension of time.